United States District Court
Southern District of Texas
**ENTERED**
December 19, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARK LACROSS, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-14-3403 |
| § | |
| LIBERTY INSURANCE CORPORATION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge is Defendant's Motion for Summary Judgment (Document No. 24). Having considered the motion, the response, the additional briefing, Plaintiff's claims, and the insurance policy at issue in this case, the undersigned concludes that Defendant Liberty Insurance Company is not entitled to summary judgment on Plaintiff's claims and that Defendant's Motion for Summary Judgment (Document No. 24) should be DENIED.

**I.   Background**

This is a first-party insurance dispute that arose following alleged wind and/or hail damage to Plaintiff Mark LaCross' residence/roof in 2013. LaCross filed a claim with his homeowners' insurer, Defendant Liberty Insurance Company and, when a dispute arose as to the monetary amount of damage, filed suit against Liberty in state court, asserting claims of breach of contract, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and violations of Texas' Prompt Payment of Claims Act. Liberty timely removed the case to this Court on the basis of diversity jurisdiction and sought to compel appraisal under the terms of the policy. On May 29, 2015, the Court granted Liberty's Motion to Compel Appraisal (Document No. 18). The appraisal

process was completed on February 23, 2016, when the appraisers selected by each side, along with the umpire, signed an appraisal award. Liberty paid the amount of the appraisal award approximately three weeks later, on March 17, 2016, and then filed a Motion for Summary Judgment in this case. According to Liberty, its timely payment of the appraisal award vitiates LaCross' claims for breach of contract and all of his extra-contractual claims for violations of the Texas Insurance Code, violations of the Deceptive Trade Practices Act and violations of the Prompt Payment of Claims Act. LaCross, in response, maintains that the payment was not timely, and that his extra-contractual claims survive, in any event, given that there is no dispute in this case that his claim was covered by the insurance policy at issue.

II.     **Summary Judgment Standard**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1] A party opposing a properly supported motion for summary

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's

judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

**III.    Discussion**

There are three provisions in the homeowners' policy that are relevant to LaCross' claims and Liberty's Motion for Summary Judgment. They include: "Section I. Conditions B. Duties After Loss 2. Our Duties After Loss"; "Section I. Conditions E. Appraisal"; and Section I. Conditions I. Loss Payment". These provisions are as follows:

    I.B.2.   Our Duties After Loss
           a.       No later than 15 days after we receive your written notice of claim,

---

claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

        we must:
        (1)  Acknowledge receipt of the claim;
              If our acknowledgment of the claim is not in writing, we will keep a record of the date, means and content of our acknowledgment;
        (2)  Begin any investigation of the claim;
        (3)  Specify the information you must provide in accordance with Paragraph B.1. Your Duties After Loss above;
              We may request more information, if during the investigation of the claim such additional information is necessary.
  b.  After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:
        (1)  Within 15 "business days"; or
        (2)  Within 30 days if we have reason to believe the loss resulted from arson;
  c.  If we do not approve payment of your claim or require more time for processing your claim, we must:
        (1)  Give the reason for denying your claim; or
        (2)  Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.

I.E.    Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisals will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:
1.    Pay its own appraiser; and
2.    Bear the other expenses of the appraiser and umpire equally.

I.I.    Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to payment. If we notify you that

4

>we will pay your claim, we must pay within 5 "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

(Document No. 24-2 at 19, 33, 34).

Liberty argues in its Motion for Summary Judgment that it timely paid the appraisal award because the policy's "Loss Payment" provision only required it to pay the loss amount within 5 business days of *notifying* LaCross that it would pay his claim. According to Liberty, it *notified* LaCross that it would pay his claim on the same date that it sent him a check in the amount of the appraisal award. On that basis, Liberty maintains that it is entitled to summary judgment on LaCross' breach of contract claim. As for LaCross' extra-contractual claims, Liberty maintains that LaCross cannot prevail on such claims as a matter of law in the absence of a viable breach of contract claim, and that there is no evidence of bad faith that can arise from a situation in which an insurer promptly pays an appraisal award. LaCross, in response to Liberty's Motion for Summary Judgment, argues that Liberty was required to pay the amount of the appraisal award within five business days of that award because the appraisal award was based on the appraisers' and umpire's agreement as to the loss amount. LaCross also argues that because there was never an issue as to coverage, he can maintain independent clams for violations of the Texas Insurance Code and violations of the Texas Deceptive Trade Practices Act.

Whether Liberty's payment of the appraisal award was timely is the key issue underlying LaCross' breach of contract claim. And, hinged to that issue is the viability of LaCross' extra-contractual claims. Considering the policy provisions outlined above in the manner required by Texas law, the undersigned concludes, for the reasons set forth below, that Liberty is not entitled to

summary judgment on the breach of contract claim or the extra-contractual claims.

Under Texas law, insurance contracts are generally interpreted as a matter of law, with a court's primary concern being "to give effect to the intentions of the parties as expressed by the policy language." *American Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). The Policy is to be construed as written, not as would be most practicable, for liability and/or indemnification purposes, for the parties involved. *National Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir. 1990) (courts "must endeavor to construe the insurance contract so as to avoid rendering any of its terms meaningless"). In addition, regardless of whether certain provisions are in dispute, the court must "consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless." *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014); *see also State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010) ("We must read all parts of the contract together, giving effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative.").

If the policy provisions are not ambiguous, the policy will be construed as written, with undefined and operative terms being given their ordinary and usual meaning. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). If the policy provisions are ambiguous, that is, they are subject to more than one reasonable interpretation, the provisions are construed against the insurer. *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); *Schnabel v. Philadelphia Am. Life Ins. Co.*, 795 F. Supp. 816, 822-823 (S.D. Tex. 1992). Whether a contract is ambiguous is question of law for the court. *Page*, 315 S.W.3d at 527. But, once an ambiguity has been found, the interpretation of the

contractual provisions at issue can become an issue of fact for the jury. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Here, while Liberty argues that it had five business days from the date it *notified* LaCross that it would pay the appraisal award to actually pay that amount, Liberty's reliance on the word "notify" in Section I. I. cannot be reconciled with the appraisal provision that "set" the amount of loss. Under Section I.I, because the appraisers and the umpire agreed on the amount, "the amount agreed upon [was] the amount of loss." It was at that time that Liberty's payment obligation arose. Liberty's tortured construction of its own policy, which would allow it five business days from any date it decided to "notify" its insured that it would pay a loss amount that had been set in appraisal, would render the Loss Payment provision in Section I.I. either meaningless, or decidedly ambiguous. *See Cody v. American Bankers Ins. Co. of Florida*, No. 2:14-CV-00187-J, 2015 WL 6460007 (N.D. Tex. Oct. 21, 2015) (construing as ambiguous, the exact same payment provisions as are at issue in this case). This urged construction of the payment provisions in the policy are therefore, as argued by LaCross, unreasonable. Liberty's alternate argument – that it had fifteen business days under Section I.B.2.b. to "notify" LaCross that it would pay the appraisal award – and then an additional five business days under Section I.I to pay the appraisal award – completely ignores the fact that Liberty did not, even under its own construction of the policy, "notify" LaCross that it would pay the award within fifteen business days. Instead, the summary judgment evidence shows that the appraisal award was made on February 23, 2016, but Liberty did not "notify" or contact LaCross about the appraisal award until March 17, 2016 – some 17 business days later. Under the alternative construction of the policy urged by Liberty, its notification and payment of the appraisal award was untimely. As such, for both reasons, Liberty is not entitled to summary judgment on LaCross' breach

7

of contract claim. In addition, because summary judgment is not warranted on LaCross' breach of contract claim, Liberty is not entitled, on the arguments it has advanced in its Motion for Summary Judgment, to summary judgment on LaCross' extra-contractual claims.

IV.     **Conclusion and Recommendation**

Based on the foregoing, and the conclusion that summary judgment is not available to Liberty on LaCross' claims, the Magistrate Judge

RECOMMENDS that Defendant Liberty Insurance Company's Motion for Summary Judgment (Document No. 24) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 19th day of December, 2016.

Frances H. Stacy
United States Magistrate Judge

8